BOSSON, Justice (dissenting). {92} The PRC conducted an expedited hearing on PNM’s emergency request for an automatic fuel adjustment clause. During four days of testimony before the Commission, sitting en banc, the record reflects the following lack of participation by individual commissioners. One of the commissioners personally attended none of the hearings, and only participated by teleconference for a day and a half. Another commissioner attended one hearing and was absent for all the rest. Another commissioner attended for two days only. Only two of the five commissioners — a mere 40% of the PRC — personally attended all four days worth of hearings. {93} The PRC attempts to defend such a dismal performance by citing to its own regulations which permit commissioners to abstain from attendance when they appoint a hearing examiner to take testimony, receive evidence, and recommend a decision to the full Commission. The PRC may also appoint one of its own to “preside” over hearings. Fair enough. The nagging little detail with this argument, of course, is that the Commission did not appoint a hearing examiner or one of its own to preside, but elected to hear the proceedings itself, the full PRC sitting en banc. Simply put, the Commission shouldered the responsibility of hearing this case from beginning to end, and that responsibility starts with the simple task of showing up for work. {94} The PRC parries with general legal principles that understandably excuse occasional and de minimus absences from commission or board proceedings, so long as members review the full record of proceedings before they vote on the matter at hand. In fact, as a general rule, boards and commissions enjoy a presumption to that effect. However, the desultory performance of these commissioners vastly exceeds the context from which these principles arise. No case cited to us involves absences on this grand of a scale. And we have no way of being assured that individual commissioners — the 60% who were absent from more than half of the hearings — actually did review a record of proceedings. Significantly, after four full days of hearings involving complex, technical matters, the commissioners voted a mere five days later — barely enough time, one would think, to prepare the full record, much less review it. {95} This is important. Members of boards and commissions are allowed to review the record and compensate for the occasional absence precisely because the alternative — voting on matters not reviewed — would deny due process of law to participants and the public alike. Faced with at least the potential for a due process violation, the PRC should do more than rely on a naked presumption that they reviewed the record, especially in light of the bothersome evidence suggesting that commissioners did no such thing. {96} The Commission’s own Code of Conduct states the “irrefutable principle” that “a public office is a public trust.” It further states that the Commission “needs the public’s respect and confidence that its power will be used on behalf of the community as a whole.” Respect must be earned; it does not flow automatically upon assumption of office. In the face of this record, I am compelled to wonder how we can indulge these commissioners in any presumption that implies the faithful performance of their duties. {97} And, more importantly, that question permeates the remainder of this appeal. Recall that this fuel adjustment clause — -now granted PNM for the first time in many years- — came about in an expedited, emergency proceeding that necessarily truncated the normal deliberative process for considering such a weighty matter. PNM had just been through an exhaustive rate proceeding, in which the hearing examiner recommended against this very fuel adjustment clause or one very much like it. PRC staff and many other parties joined the opposition to automatic fuel adjustment, preferring instead that PNM prove its need in the ordinary course of a rate proceeding. The PRC had not yet ruled on the hearing examiner’s recommended decision, when PNM seemingly aborted the normal appeal process and filed the present emergency petition declaring the need for immediate relief due to an impending fiscal crisis. {98} The PRC scheduled a hearing a mere two months away — a fraction of the time typically required to consider such a complex questions. Then, as the hearing drew near, PNM’s fiscal emergency evaporated, yet the PRC kept to its emergency time-table and denied the protestants their requests for additional time and opportunity to prepare and analyze complex technical evidence. The PRC then based its decision to grant the fuel adjustment clause less upon the petition for emergency relief and more upon evidence in the initial rate proceeding that was still being appealed. {99} As judges, we take comfort when duties are performed in an orderly, routine manner consistent with normal practice and procedure. Under those circumstances, we rely on a presumption of regularity. Conversely, however, when matters fall outside the norm, experience teaches us to exercise a healthy dose of caution and circumspection. We are on notice of the need for further inquiry. I am at that point with the PRC. {100} This Court is the only constitutionally empowered body that can review the final orders of the PRC. As the majority rightly notes, we traditionally afford those decisions a high level of deference, affirming in all but the rarest circumstances. We defer to the PRC because, at least theoretically, the commissioners are in a better position to decide these types of issues — having been elected for that purpose and having acquired special expertise in these matters. {101} I am not convinced, however, that we are meeting our constitutional obligation when we defer to a commission that reaches its decisions under circumstances such as these. Let us not forget that PRC commissioners sit in a quasi-judicial capacity; they adjudicate complex, technical matters that go to the heart of the public interest of our state. We would never tolerate judicial conduct like this; I see no reason to be more permissive of PRC commissioners. {102} I would reverse this decision and remand for the PRC to reconsider its decision to grant PNM an automatic fuel adjustment clause, a decision that could ultimately be borne out, but only after a full proceeding in the ordinary course giving these protestants and others a full and adequate opportunity to present their case in opposition.